SCH | SCHINDLER COHEN & HOCHMAN

May 27, 2016


BY ELECTRONIC FILING

Hon. Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:     *Rubenstein v. vTv Therapeutics, Inc. et al.*, No. 15 Civ. 9752 (VSB)

Dear Judge Broderick:

      We write as counsel to Ronald O. Perelman, MacAndrews & Forbes Incorporated ("MacAndrews" and together, the "Defendants"), and Nominal Defendant vTv Therapeutics Inc. ("Therapeutics"), to request a pre-motion conference and to seek permission to move to dismiss the Second Amended Complaint herein (the "Second Amended Complaint" or "Cmplt.").

      Plaintiff Aaron Rubenstein contends that Defendants are liable under Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)") to disgorge alleged short swing profits from a purported sale followed, within six months, by purchases of Therapeutics stock.  Specifically, Plaintiff alleges that, upon Therapeutics' IPO on July 29, 2015 (the "IPO"), Defendants "became obligated to sell 1,344,186 shares, more or less, of [Therapeutics'] Class A Common Stock" to an individual, Adnan M.M. Mjalli ("Mjalli" and the "Mjalli Securities").  (Cmplt. ¶ 11.)  Plaintiff further alleges that following this "sale," Defendants made various purchases of Therapeutics stock during the months of August 2015 to January 2016. (*id.* ¶ 14) and acquired a "call equivalent" position for Class B Common Stock of Therapeutics and accompanying Nonvoting Common Units, which could be exchanged for Class A Common Stock (*id.* ¶¶ 15-16).

      Plaintiff's claims should be dismissed because, pursuant to a December 30, 2014 letter agreement (the "Letter Agreement"), Defendants incurred a fixed and irrevocable obligation to transfer 6% of the common equity from any future Therapeutics IPO (should one ever occur) to Mjalli.  Indeed, the terms of the Letter Agreement made it impossible for Defendants to profit in any way from the transfer of the requisite shares of Therapeutics to Mjalli – regardless of the price or timing of the IPO.  Rather, Defendants had effectively transferred all of their economic interests in those shares in December 2014 by virtue of the Letter Agreement.  Defendants thus lacked any pecuniary interest in the Mjalli Securities at the time of the IPO.  The post-IPO transfer of securities to Mjalli therefore cannot be a "sale" under Section 16(b).  Additionally, the actual transfer of the economic interest corresponding to the then-nonexistent Mjalli Securities occurred on December 30, 2014, and thus any "sale" occurred outside of Section 16(b)'s six-month matching period.  Because Defendants had no opportunity to profit from the Mjalli Securities after December 30, 2014, Section 16(b)'s remedial purpose would not be served by disgorgement, and the Second Amended Complaint should be dismissed.

### a. Defendants Had No Pecuniary Interest In The Mjalli Securities And Therefore The Post-IPO Transfer Was Not A "Sale"

Liability under Section 16(b) requires: "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Chechele v. Sperling*, No. 11 Civ. 0146 (PAC), 2012 WL 1038653, at *3 (S.D.N.Y. Mar. 29, 2012) (citing *Gwozdzinsky v. Zell/Chillmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)), *aff'd*, 758 F.3d 463 (2d Cir. 2014). Further, securities transactions only fall under Section 16(b) if the securities are "beneficially owned" by the insider. *See, e.g.*, *Feder v. Frost*, 220 F.3d 29, 33 (2d Cir. 2000); *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 526 (9th Cir. 1981), *abrogated by Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414 (2012). In this context, beneficial ownership requires that the insider must have a "pecuniary interest" in the subject securities.[1]

Where, as here, a transaction "does not plainly fall within the literal terms of the statute," the Second Circuit takes a pragmatic approach in applying these elements. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 124 (2d Cir. 2002).[2] Under this approach, a court should ask "whether the transaction may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 594 (1973). If not, there is no violation of Section 16(b). *Id.*

Here, the Second Circuit's pragmatic approach compels dismissal because Defendants had no pecuniary interest in the Mjalli Securities at the time of the IPO (or, for that matter, at any time after the Mjalli Securities came into existence). The post-IPO transfer of the Mjalli Securities (which Plaintiff claims to be a "sale") was mandated by the terms of the December 30, 2014 Letter Agreement. In essence, that agreement provided for the sale of certain companies that were owned in whole or part by Mjalli (the "Predecessor Companies") to MacAndrews' affiliates. As part of the transaction, Mjalli retained an economic interest in Predecessor Companies and the Letter Agreement provided a mechanism to protect and realize that interest under various circumstances. Relevant here, the Letter Agreement required that, in the event of an IPO of any successor to the Predecessor Companies, 6% of the resulting common equity from such IPO would be transferred to Mjalli.[3] Therapeutics was a successor to the Predecessor

---

[1] "Rule 16a-1(a)(2) provides that the term 'beneficial owner' means, for all purposes under Section 16 other than calculating ten percent ownership, 'any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the [issuer's] equity securities.'" Peter J. Romeo & Alan L. Dye, *Section 16 Treatise And Reporting Guide* § 4.03 (4th ed. 2012). "The term 'pecuniary interest' in turn is defined to mean "the opportunity, directly or indirectly, to profit or share in any profit from the transaction in the subject securities." *Id*.

[2] The post-IPO transfer to Mjalli is not alleged to be a standard sale. There was no new agreement made at or after the IPO to sell the Mjalli Securities. Nor was there any new consideration alleged to have been received by Defendants from Mjalli at or after the IPO. Thus, this transfer is plainly different from a situation in which a party simply goes into the market and sells stock.

[3] The Letter Agreement provides: "**If there is an IPO** of TTP or HPP [two of the Predecessor Companies], as the case may be, or any entity that has succeeded to any of the assets of the foregoing and which is issuing equity securities in such IPO . . . TPP or HPP, as applicable, **shall or shall cause the IPO Entity to, make a payment to Mjalli in the common equity securities of the IPO entity in an amount equal to six percent (6%) of the**

Companies. Therefore, upon its IPO on July 29, 2015: (i) Defendants had a fixed contractual commitment dating back to December 30, 2014, to transfer 6% of Therapeutics' common equity (regardless of the price or timing of the IPO) to Mjalli; (ii) Mjalli had a corresponding contractual right to receive the Mjalli Securities before they even came into existence; and (iii) Defendants had relinquished any opportunity to profit from the Mjalli securities as of December 30, 2014.

Accordingly, the transfer to Mjalli following the IPO was not a "sale" under Section 16(b) because Defendants had no pecuniary interest in the Mjalli Securities at the time of that transfer; they had *already* transferred all economic interests corresponding to the Mjalli Securities in December 2014. "[I]n deciding whether a certain transaction is a Section 16(b) 'purchase' or a 'sale' it is relevant to first consider whether the transaction in any way makes possible the unfair insider trading that Section 16(b) was designed to prevent." *Blau v. Lamb*, 363 F.2d 507, 518 (2d Cir. 1966). But because Defendants had no pecuniary interest in the Mjalli securities, there was no possibility of unfair insider trading here and, thus, no "sale" under Section 16(b).

### b. If There Were A "Sale," It Occurred On December 30, 2014, When Defendant's Obligations Became "Fixed and Irrevocable"

Put differently, any "sale" of the Mjalli securities occurred on December 30, 2014, when the Letter Agreement was concluded. To determine when a "purchase" or "sale" occurs for Section 16(b) purposes, courts look to the date that Defendants' obligations became "fixed and irrevocable." *Donoghue v. Murdock*, No. 13 Civ. 1224 (PAE), 2013 WL 4007565, at *9 (S.D.N.Y. Aug. 6, 2013); *Bruh v. Bessemer Venture Partners III L.P.*, No. 03 Civ. 7340 (GBD), 2005 WL 2087803, at *5 (S.D.N.Y. Aug. 29, 2005), *aff'd*, 464 F.3d 202 (2d Cir. 2006); *see also Provident Sec. Co. v. Foremost-McKesson, Inc.*, 506 F.2d 601, 606 (9th Cir. 1974), *aff'd*, 423 U.S. 232 (1976) (in deciding "when a sale is complete for purposes of section 16(b) . . . courts have looked to that point at which the insider has relinquished his ability to control the transaction to the extent that he no longer has the potential to use inside information to his own advantage and to the detriment of the public or outside shareholders").

Defendants' obligation to transfer the Mjalli securities immediately upon the Therapeutics' IPO became fixed and irrevocable as of December 30, 2014, upon the execution of the Letter Agreement. Any "sale" therefore occurred as of that date. *Bruh* 2005 WL 2087803, at *5.

Because Defendants were unconditionally obligated to transfer the Mjalli Securities immediately to Mjalli upon the IPO and could not profit from the transfer of the Mjalli Securities, regardless of the price or timing of the IPO, there was clearly no danger of speculative abuse here – and no violation of Section 16(b). Defendants therefore respectfully request permission to move to dismiss the Second Amended Complaint.

---

**common equity of the IPO Entity** that is actually received or otherwise held." (Letter Agreement § 2(i) (emphasis added).)

Respectfully submitted,

Jonathan L. Hochman
(212) 277 6330
jhochman@schlaw.com



cc: Counsel of Record (*by ECF and e-mail*)