# DAVID LOPEZ

ATTORNEY AT LAW

171 EDGE OF WOODS ROAD
SOUTHAMPTON, NEW YORK 11968

MAILING ADDRESS:
P.O. BOX 323
SOUTHAMPTON, NEW YORK 11969-0323

TELEPHONE (631) 287-5520
FACSIMILE (631) 283-4735
E-MAIL DAVIDLOPEZESQ@AOL.COM

June 2, 2016

Hon. Vernon S. Broderick
Judge of the United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> The parties are requested to appear for a pre-motion conference on Defendants' contemplated motion to dismiss on June 15, 2016 at 11:30 a.m.
>
> SO ORDERED:
> /s/ Vernon Broderick
> HON. VERNON S. BRODERICK
> UNITED STATES DISTRICT JUDGE
> 6/3/16

Re:   *Rubenstein v. vTv Therapeutics, Inc. et al.*, No. 15 Civil 9752 (VSB)

Your Honor:

I am one of plaintiff's counsel and I write in response to defendants' request for a pre-motion conference seeking permission to bring a motion to dismiss. We support defendants' request viewing such a motion as a sensible way to test the core legal contentions of the parties early and economically.

There is no dispute about the existence or the terms of purchases made within a period of less than six months of the putative sale. The purchases were open market, broker mediated transactions, fully documented. Whether the putative sale is indeed a sale for Section 16(b) purposes, however, is disputed and a determination of that question is the object of the proposed motion.

On July 29, 2015, an initial public offering ("IPO") was effected in the shares of common stock of vTv Therapeutics, Inc. ("vTv"). The event of the IPO triggered a conditional contractual obligation on the part of the defendants to deliver to Mr. Adnan M.M. Mjalli a payment "in cash, securities or Marketable Securities." (Page 8, par. (j)) of the letter agreement dated December 10, 2014). The court will note the variance of the text from the defendants' characterization of it in their letter requesting a pre-motion conference. The letter agreement provides, in a complex and densely packed 6 page provision, a requirement that, under a variety of alternative circumstances, defendants or their predecessors were to transfer to Mr. Mjalli "an amount equal to 6%" of a number derivable by formula and termed "Distributable Excess Equity Amount". The need for payment upon an IPO was one of several contingent future events that could be triggered by any of either (i) "a Sale Transaction of TTP (a specified asset)" or (ii) an IPO of one or more IPO entities … that, individually or in the aggregate, hold all or substantially all of the assets of TTP…" subject to adjustments of various kinds.

DAVID LOPEZ

Hon. Vernon S. Broderick
June 2, 2016
Page 2

In other words, there were conditions precedent to the obligation of the defendants to make payment and they could have written a check or delivered a variety of securities in settlement of their obligation. The defendants were not, as they contend, subject to a "Fixed and Irrevocable" obligation to settle their conditional debt by delivering shares of vTv.

The presence of choice in how the defendants would settle their debt lets the air out of their arguments that they were devoid of pecuniary interest in the shares and that there was no possibility of speculative abuse. Their choice to pay in cash or in kind could have been instructed by access to inside information persuading them that the IPO price was inflated and would decline, as it did, making a share payment the preferable choice. In essence, using inside information defendants could have sold short against the box, waited for the price to plunge, and then bought to cover. We make no claim of actual abuse, just of the possibility, and of its congruence to the sale and purchases that actually happened.

It is well settled law that a material condition precedent to a person's obligation to perform an obligation renders that obligation less than fixed and irrevocable. *Donoghue v. Local.com Corp.*, 2009 W.L. 260797 (S.D.N.Y, February 3, 2009), *aff'd.*, *355* Fed. Appx. 520 (2d Cir. 2009); *Morales v. Gulf Energy & Development Corp.*, Fed. Sec. L. Rep. (CCH Par. 96,222, at 92,524-25 (D. Col. 1977); *CRA Realty v. Buffet, Inc.*, 1988 WL 1058220 (D. Minn, March 23, 1988. *See, generally* Romeo & Dye, *Section 16 Treatise And Reporting Guide, 4th Edition*, Section 11.02[c]. Add freedom of choice as to the currency with which an obligation is to be settled – with a totally volitional decision to pay in shares – and you have a sale.

The defense also attempts to invoke the so-called (in the argot of short-swing trading law) "Pragmatic Exception" to strict liability, referring to the Supreme Court's decision in *Kern County Land Company v. Occidental Petroleum Corp.*, 411 U.S. 582 (1977). This is problematic in that the exception is available only to "borderline" transactions where the transaction is not clearly a delivery of shares for consideration and two additional conditions are met: (i) the transaction is involuntary, and (ii) the seller has no possibility of access to inside information.

Here there was a settlement by the defendants of an obligation through the volitional choice of vTv shares as a medium of exchange, the transaction was entirely voluntary as it could have been structured in another currency and the statute conclusively presumes that persons in the position of the defendants have access to inside information.

Hon. Vernon S. Broderick
June 2, 2016
Page 3

Plaintiff's counsel urge that the court grant the defendants' request to bring on a motion to dismiss. It will clear the air.

Very truly yours,

David Lopez

DL/el
Cc:    All Counsel of Record Via ECF